**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER DODGE, *on behalf of herself and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>CONSTELLATION SOFTWARE INC., N. HARRIS COMPUTER CORPORATION; HARRIS SCHOOL SOLTUIONS, INC. d/b/a EZSCHOOLPAY, and other related entities;<br><br>Defendants. | Case No. 6:26-cv-301 (AJB/MJK)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JENNIFER DODGE ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against CONSTELLATION SOFTWARE INC., N. HARRIS COMPUTER CORPORATION; HARRIS SCHOOL SOLTUIONS, INC. d/b/a EZSCHOOLPAY, and other related entities ("EZSchoolPay" or "Defendants"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which is based on personal knowledge.

**<u>NATURE OF THE ACTION</u>**

1. School meal programs are an integral component of primary and secondary educational systems in the United States and in the state of New York.

2. Each morning thousands, if not millions, of parents and guardians send their kids to school, and make sure they have money to buy lunch.

3. For decades, schools have given their students cost-effective lunch, breakfast, and milk to ensure that kids are fed nutritious meals so they can focus on learning.

4. Before companies like Defendants were involved, the transactions were straightforward—with the only goal being to make sure students were fed healthy food and beverages to make it through the school day until they returned home.

5. Defendants have corrupted that transaction and injected themselves as middlemen, profiting both from the parents (i.e., junk fees on transactions), and the school districts (i.e., contracting for guaranteed annual payments), thereby diverting money away from the central exchange of food for students to themselves, while delivering only ancillary services.

6. Defendants' actions are illegal under federal law, violate state law, violate the terms between credit card companies and merchants, and upon information and belief violate the contract between the school, the school district, and the terms Defendants are required to comply with.

7. A pre-pandemic survey of teachers across the United States found that when students are hungry at school, it affects their ability to concentrate, leads to poor academic performance, and causes increased behavioral and discipline problems.[1]

8. These problems are particularly acute for students from low-income communities, 60 percent of whom report having come to school hungry.[2]

9. School meal programs help close the academic gap between children living with food insecurity and their peers. For example, research shows that availability of school breakfasts

---

[1] *Teachers: Hungry Kids Can't Learn*, No Kid Hungry 2017), https://www.nokidhungry.org/sites/default/files/pdfs/hungry_kids_cant_learn_-_hunger_in_our_schools_micro_report.pdf (last accessed Feb. 3, 2026).

[2] No Kid Hungry, *How Does Hunger Affect Learning?*, (April 24, 2023) https://www.nokidhungry.org/blog/how-does-hunger-affect-learning (last accessed Feb. 20, 2026)

increases educational attainment scores,[3] and that availability of school lunches has "sizable" lifetime effects on educational attainment.[4]

10. But the benefits of school meal programs are not enjoyed only by low-income students. Tens of millions of children, whose families do not meet income thresholds for free or reduced-price meals, rely on the availability of reasonably priced, nutritionally balanced meals available every day in the convenience of the school cafeteria.

11. In fact, according to a recent study authored by the dean of the School of Nutrition Science at Tufts University, "Schools are now the single healthiest place Americans are eating."[5]

12. Unfortunately, a new generation of school bullies is hard at work making school meals less affordable for working families in the United States and in New York. These bullies are highly sophisticated payment processing companies like EZSchoolPay.

13. EZSchoolPays' business model is to take advantage of its captive audience, children and families, by charging unjustifiable "convenience" and "service" fees at the school lunch counter (hereafter, "Junk Fees").

14. These Junk Fees plague normal and ordinary transactions whereby parents or family members provide money so that students can eat school lunches.

---

[3] David E. Frisvold, *Nutrition and Cognitive Achievement: An Evaluation of the School Breakfast Program*, 124 J. Pub. Econ. 91 (2015), https://doi.org/10.1016/j.jpubeco.2014.12.003.

[4] Peter Hinrichs, *The Effects of the National School Lunch Program on Education and Health*, 29 J. Policy Analysis and Management 479 (2010), https://doi.org/10.1002/pam.20506.

[5] Audrey Laganas Jenkins, *Study Finds Americans Eat Food of Mostly Poor Nutritional Quality – Except at School*, TuftsNow (Apr. 12, 2021), https://now.tufts.edu/2021/04/12/study-finds-americans-eat-food-mostly-poor-nutritional-quality-except-school (last accessed Feb. 3, 2026).

15. Though EZSchoolPay describes Junk Fees as related to the cost of offering payment services to working families, the Junk Fees bear little or no relationship to EZSchoolPays' costs of doing business.

16. Nor does the nature of EZSchoolPays' payment structure, through which they charge a significant fee on every single minimum transaction. EZSchoolPay does this without allowing any alternatives that may save families money— like permitting larger deposits, permitting fee-free transaction options, promoting those fee-free transaction options, tethering the transaction fee to the actual cost of conducting the transaction, or permitting other entities to compete within the school for the same services.

17. EZSchoolPay also wrongfully discloses and advertises that its fees are "charged by your school or school district"[6].

18. EZSchoolPay is the sole beneficiary of the fees it charges.

19. EZSchoolPay does not disclose the existence of fee-free options, does not disclose that the school (and or school district) is paying a significant price to cover the cost of services, does not disclose that charging fees for access to school lunch, breakfast, and milk programs is illegal, and does not disclose that the fees reduce the amount of food and beverages available to students.

20. EZSchoolPay does not disclose that its charging of Junk Fees violates the terms it's required to follow as a merchant under the credit card networks' governing agreements, including Visa Core Rules and Visa Product and Service Rules.

---

[6] *See* https://harrisschoolsolutions.com/products/ezschoolpay/#:~:text=EZSchoolPay%20%2D%20Harris%20School%20Solutions (last accessed Feb. 4, 2026)

21. Upon information and belief, compliance with these credit card system rules is incorporated into Defendants' agreement with the school (or school district).

22. EZSchoolPays' Junk Fees, as assessed to Plaintiff Dodge and the putative class members here, violate both Visa's Rules regarding convenience and surcharge fees.

23. Upon information and belief, EZSchoolPay does not disclose that it has agreed via contract to comply with all state and federal laws and does not disclose that it requires the school districts to engage in exclusivity agreements for its services.

24. EZSchoolPay failed to comply with the rules of the credit card companies[7] as part of their agreement as a merchant, including to properly disclose a debit or credit card surcharge and to refrain from assessing convenience, surcharge, and other fees that do not comply with the rules of the Credit Card companies.

25. Defendants' agreements, including the material terms with the school, the school district, the credit card companies, financial institutions, and/or other entities were not disclosed to parents or students.

26. In fact, parents and students are wrongfully led to believe their school or school district is covering and/or retaining the payments of the Junk Fees.

27. Plaintiff and similarly situated parents, guardians, and/or students were intended beneficiaries of the contracts that EZSchoolPay, the school, and the school district entered into.

---

[7] To carry out the EZSchoolPay' program, Defendants entered into an agreement with the school or school district. By using payment cards to process payments, either EZSchoolPay, the school district, or both must be bound by all the rules imposed on merchants by the credit card companies such as Visa, Mastercard, American Express, and Discover. *See e.g.*, https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-public.pdf; id. at 5.5 (describing disclosure rules for "Surcharges, Convenience Fees, and Service Charges").

28. The Junk Fees simply pad EZSchoolPays' bottom line, at the expense of families because, in most circumstances, the school districts already pay these companies for their services.

29. The Junk Fees allow EZSchoolPay and other payment processors to "double dip" by charging both the school district and families and prevent many children who are entitled to free and reduced lunches from being able to receive the full benefit of these programs.

30. Defendants limit access to school lunch, breakfast, and milk programs by assessing these Junk Fees—forcing parents to pay these fees, limiting their child's access to food and beverages, and limiting the school's ability to spend more money on healthy food and beverages for its students.

31. As detailed in a July 2024 study by the Consumer Financial Protection Bureau ("CFPB"), the transaction fees that EZSchoolPay and others charge "may send $0.60 to payment processors for each $1 [that low-income families] spend on school lunch."[8]

32. Not only do the Junk Fees disproportionately harm the working class, but the aggregate cost of Junk Fees are also staggering. The CFPB estimates that school lunch Junk Fees cost children and their families around $100 million each year collectively.[9] This is $100 million that could, and should, have gone to buying students food or covering other household expenses.

33. As former President Biden explained in the 2023 State of the Union address, "Junk fees may not matter to the very wealthy, but they matter to most folks in homes like the one I grew up in. They add up to hundreds of dollars a month. They make it harder for you to pay the bills[.]"[10]

---

[8] https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-costs-of-electronic-payments-in-k-12-schools/

[9] *Id.*

[10] Biden White House Archives, *Remarks of President Joe Biden – State of the Union Address as Prepared for Delivery* (Feb. 7, 2023), https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2023/02/07/remarks-of-president-joe-biden-state-of-the-union-address-as-prepared-for-delivery/

34. EZSchoolPays' Junk Fee practices ensnare parents and students. Parents and caregivers cannot choose their payment platform.

35. Fee-free options may not be meaningfully available to all families. These Junk Fees add up for families, particularly those with lower incomes, and EZSchoolPay faces little competition.[11]

36. In fact, fee-free payment options are not disclosed at all, either on the school website, on EZSchoolPays' website, or during the transactions themselves.

37. Further, EZSchoolPays' fees increase based on the timing of the transaction. For example, if a parent or family member attempts to fund a single lunch, the Junk Fees increase beyond even the excessive typical levels for such Junk Fees.

38. EZSchoolPays' Junk Fee practices are not only wrong. They are also illegal.

39. Plaintiff paid EZSchoolPays' Junk Fees and now brings this Class Action Complaint on behalf of herself and all others similarly situated—parents, guardians, and caregivers of students in New York schools—to obtain redress and prevent future harm.

## PARTIES

40. Plaintiff Jennifer Dodge is an adult, who at all relevant times, is a resident and citizen of the state of New York.

41. Plaintiff Dodge was required to pay EZSchoolPays' Junk Fee from in or around 2022 till present as part of providing a meal for her children that attend New Hartford Central Schools in New Hartford, New York.

[11] https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-costs-of-electronic-payments-in-k-12-schools/

42. Upon information and belief, Constellation Software Inc., N. Harris Computer Corporation, Harris School Solutions, Harris Computer Systems, and other unknown entities, own and jointly operate under the brand of EZSchoolPay.

43. Defendant Constellation Software Inc. is headquartered in Toronto, Canada at #66 Wellington Street West, Suite 5300 TD Bank Tower, Toronto, Ontario.[12]

44. Harris Computer Systems is a "wholly-owned subsidiary"[13] of Defendant Constellation Software Inc.

45. Defendant, N. Harris Computer Corporation is a foreign business corporation organized under the laws of Canada and with its primary place of business at 1 Antares Drive Suite 100, Ottawa, ON, Canada, K2E 8C4. Defendant is a citizen of Canada.

46. Defendant N. Harris Computer Corporation is registered within New York with a DOS ID of 3995186 with a registered agent at United Agent Group Inc., at 600 Mamaroneck Avenue #400, Harrison, NY 10528.

47. Defendant Constellation Software Inc. transacts business in New York but has failed to register with the New York State Department of State as a business entity.

48. Constellation Software Inc. is the parent company of N. Harris Computer Corporation, Harris School Solutions, and Harris Computer Systems which control, manage, and dictate the policies of EZSchoolPay.

49. Defendants operating as EZSchoolPay charge Junk Fees to parents like Plaintiff Dodge and students through its school lunch programs in school districts throughout New York.

[12] https://www.csisoftware.com/overview (last accessed Feb. 4, 2026)
[13] https://www.csisoftware.com/category/press-releases/2019/01/09/constellation-acquires-sds-software (last accessed Feb. 4, 2026)

50. Upon information and belief, hundreds if not thousands of transactions took place in the state of New York during the relevant period in which Defendants deceptively and illegally took Junk Fees from parents like Plaintiff.

## JURISDICTION AND VENUE

51. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(C), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

52. This Court has personal jurisdiction over Defendants because Defendants have purposely availed themselves of the privilege of conducting business activities in New York and Plaintiff and Class Members' claims arise directly from Defendants' business transactions with school districts in New York.

53. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the deceptive business transactions that are the subject of this action were conducted in this District, and the formation, performance and breach of contract that are at issue in this action also occurred in this District.

## FACTUAL ALLEGATIONS

### A. America's School Lunch Programs Allow Children to Focus on Education, Not Hunger

54. Congress passed the National School Lunch Act in 1946 as a "a measure of national security, to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other food[.]" 42 U.S.C. § 1751.

55. The National School Lunch Program ("NSLP") is run by the United States Department of Agriculture ("USDA") and has been repeatedly renewed and updated for nearly 80 years.

56. Each day, almost 30 million children eat school lunches provided through the NSLP, with more than 21 million of those served free or reduced-price lunches.[14]

57. In 1966, Congress authorized a School Breakfast Program ("SBP") as a further recognition of "the demonstrated relationship between food and good nutrition and the capacity of children to develop and learn." 42 U.S.C. § 1771.

58. Each day, more than 15 million children eat school breakfasts through the SBP, with more than 12 million of those served free or reduced-price lunches. [15]

59. Recognizing the importance of nutrition in early childhood development, as Congress indicated when establishing the NSLP and SBP, the USDA has imposed a requirement that children are not charged additional fees for services provided in conjunction with the delivery of school meals.[16]

60. According to the USDA, "by charging fees in addition to the regular reduced price or paid meal charge, a school is limiting access to the program and imposing an additional criterion on participants."[17]

---

[14] School Nutrition Association, School Meal Statistics, https://schoolnutrition.org/about-school-meals/school-meal-statistics/ (last accessed Feb. 11, 2026).

[15] *Id.*

[16] U.S. Department of Agriculture, Food and Nutrition Services, Fees for Lunchroom Services (June 14, 2021), https://www.fns.usda.gov/cn/fees-lunchroom-services (last accessed Feb. 3, 2026).

[17] *Id.*

61. Within New York State, the New York State Department of Education administers the school lunch programs and the local schools operate the programs.[18]

**B. The CFPB Blows the Whistle on Payment Processors' Exploitation of American Families**

62. Payment processors like EZSchoolPay sign contracts with schools and school districts to offer payment services for school meal programs.

63. Payment processors offer schools and districts, which are often under tight budget constraints and mandates to cut costs, the enticing possibility of reducing their operating expenses by outsourcing payment services.

64. In fact, EZSchoolPay advertises it "optimizes your district's nutrition program" and that it will "reduce or eliminate cash handling to speed up lines and lower labor costs…".

65. Payment processors then provide the school or district's families with an online payment platform where they can electronically load funds into an account that children can draw from to pay for their meals at school.

66. The hidden costs of these transactions, however, are borne by children and their families.

67. The Consumer Financial Protection Bureau ("CFPB") released a report in 2024, titled *Costs of Electronic Payments in K-12 Schools*, exposing the hundreds of millions of dollars in Junk Fees that payment processors like EZSchoolPay have charged parents and caregivers so that their children can eat at school.

---

[18] https://otda.ny.gov/workingfamilies/schoollunch.asp (last accessed Feb. 11, 2026)

68. The CFPB found that payment processors like EZSchoolPay increase costs to families by charging far more than their processing cost—up to nine times more—to inflate their profits.[19]

69. According to the CFPB report, payment processors like EZSchoolPay charge American families over $100 million each year in Junk Fees.[20]

70. On average, at least 8% of the money families pay for school meals goes directly to payment processors like EZSchoolPay.

71. The burden of these Junk Fees is not born equally: families eligible for free and reduced-price lunch spend as much as ***sixty cents of every dollar*** on Junk Fees.[21]

72. Payment processors like EZSchoolPay unilaterally control fee levels and retain the ability to change them at any time. Since families within a school or district can only use the payment platform their district has chosen, they are a captive audience that has no ability to shop around for lower fees.

73. While some schools also offer other options, they often require, for example, that parents bring a check or cash to the cafeteria during working hours—without an option for families for whom visiting school during the workday is not an option. Other districts limit the use of cash, personal checks, or both, effectively forcing parents to rely on the electronic option or risk their kids going hungry during the school day.

74. Low-income families are disproportionately impacted by Junk Fees charged in connection with school meal accounts.

---

[19] https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-costs-of-electronic-payments-in-k-12-schools/

[20] *Id.*

[21] *Id.*

75. Payment processors, like Defendants, often charge Junk fees as flat fees which in particular have a regressive impact on lower-income users—particularly where the same fees are charged regardless of whether a student receives a free or reduced-price lunch. Flat transaction fees are also much more expensive for families who make deposits more frequently, compared to those who can afford to make higher deposits less often.[22]

76. Following the CFPB Report, on September 18, 2024, eight United States Senators wrote to the Secretary of the Department of Agriculture demanding that the department "act quickly to address exorbitant school lunch fees charged by payment processors."[23]

77. The Senators called for an end to the practice because, through these Junk Fees, payment processors "snatch[] dollars meant to pay for kids' school lunches in order to pad their profits," calling it "unacceptable that parents face exorbitant fees just so their children can eat school lunch."[24]

**C. EZSchoolPay Exploits American Families at the School Lunch Counter**

78. EZSchoolPay is one of the largest school payment processors in the country, covering thousands of schools.

79. EZSchoolPay engages in each of the problematic industry-wide practices described above.

80. EZSchoolPay also falsely leads parents, guardians, and students who are forced to use their services, to believe that their schools or school districts are the ones pocketing the Junk Fees.

---

[22] *Id.*

[23] *See* https://www.warren.senate.gov/imo/media/doc/warren_fetterman_etc_letter_to_usda_on_school_lunch_payment_processing_fees_091824.pdf

[24] *Id.* at 1.

81. EZSchoolPay advertises to school districts on their website that with their program schools and districts can "automatically direct online payments and parents convenience fees to your district's bank account…".[25] Parents, guardians, students, and schools/school district are wrongly led to believe the Junk Fees are being used by the district or going to the students accounts meanwhile only EZSchoolPay is the beneficiary of the Junk Fees it charges.

**a. EZSchoolPay Falsely Describes the Junk Fees as Being Charged by the School Districts**

82. On its website, EZSchoolPay describes the Junk Fee as being "charged by your school or school district."[26]

83. Yet EZSchoolPay knows the fee is not being retained or set by the districts and that EZSchoolPay has full control of the Junk Fees being charged.

84. In fact, EZSchoolPays' Terms of Use ("TOU") state "Other than the receipt of payments made by you (**less applicable fees charged by us**) neither the school district, the school, the school nutrition department, nor any individuals employed by the school district profit from this Service" (emphasis added).

85. EZSchoolPay further states in their TOU that "The student's school receives the proceeds of all payments less any service fees associated with the transaction."

86. Parents, guardians, and caregivers to students are purposefully misled that the School District sets the costs of the Junk Fees, charges such fees, and retains them despite EZSchoolPays' own admission of charging, accessing, and retaining the full benefit of these Junk Fees.

---

[25] https://harrisschoolsolutions.com/products/ezschoolpay/#:~:text=EZSchoolPay%20%2D%20Harris%20School%20Solutions (last accessed Feb. 4, 2026)

[26] https://www.ezschoolpay.com/Pages/General/EnglishFAQ.pdf (last accessed Feb. 18, 2026)

**b. EZSchoolPay Sets the Fee Amounts and Decides How to Describe Those Fees**

87. EZSchoolPay enters into Service Agreements with school districts to provide an electronic payment portal ("EZSchoolPay.com") where parents or caregivers can prepay for their children's school meals. Often this is for breakfast or lunch, but other times—including for children on otherwise free and reduced lunch programs—it is so that kids can buy items that are in addition to a meal, such as snacks or a drink.

88. Upon information and belief in the Service Agreements, school districts agree to pay EZSchoolPay set amounts for its services. In fact, according to Harris School Solutions website[27] school districts can reach out to EZSchoolPays parent company Harris School Solutions to "request pricing" for its services.

89. Upon information and belief, the contracts offered to schools by EZSchoolPay are adhesion contracts that do not allow schools or school districts to negotiate in a meaningful way the pricing mandates that EZSchoolPay dictates – nor does it allow schools to contract with other vendors or providers at cheaper rates.

90. Additionally, the Service Agreements also authorize EZSchoolPay to charge parents fees on a per-transaction basis. However, EZSchoolPay maintains unilateral control over the parent-facing fee structure and disclosures, and in practice, this discretion is abused to inflate prices.

91. The CFPB found that the actual cost to payment processors for a credit, debit, or prepaid card transaction is around 1.53% of the transaction amount, while the cost of an ACH (electronic bank transfer) transaction is between $0.26 and $0.50 per transaction.[28]

---

[27] https://harrisschoolsolutions.com/products/qssoasis/#qssform (last accessed Feb. 18, 2026)

[28] https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-costs-of-electronic-payments-in-k-12-schools/

92. Despite these modest processing costs, EZSchoolPay charges at least $2.95 per transaction made in the New Hartford Central School District ("NHCSD"), where Plaintiff Dodge's child attends school.

93. In concrete terms, this means that if a low-income single parent wanted to add $25 to their child's lunch account at a $2.95-per-transaction-school, that transaction would cost EZSchoolPay about $0.38 cents but would net EZSchoolPay about $2.57 on top of its costs on the transaction—a profit rate more than six times the cost of the transfer.

94. The profits are not limited to fees. EZSchoolPay can also earn interest accumulated on funds that parents pay to EZSchoolPay while those funds remain in the child's EZSchoolPay account, including after the child is no longer enrolled in the school district.

95. Despite the CFPB's and the Senate's calls to eliminate these Junk Fees, EZSchoolPay continues to exploit parents and children to this day.

**c. The EZSchoolPay User Interface Falsely Describes the Junk Fees as "Costs"**

96. On its website, EZSchoolPay describes the Junk Fees as "designed to cover or offset the normal costs of processing credit card transactions and other costs associated with maintaining a credit card merchant account. Because it is a flat dollar amount you can be sure you will get the most payment amount for the least fee."[29]

97. As described above, however, EZSchoolPays' Junk Fees far exceed the actual costs EZSchoolPay incurs to process payments.

98. Nor are EZSchoolPays' Junk Fees related to the costs of the EZSchoolPay website, because these costs are already paid for by the school or school district pursuant to its agreement with EZSchoolPay.

---

[29] https://www.ezschoolpay.com/Pages/General/EnglishFAQ.pdf (last accessed Feb. 18, 2026)

99. In fact, EZSchoolPay goes to great lengths to conceal from consumers that school districts have already paid for the cost of setting up the district-specific implementation of the EZSchoolPay site.

100. The standard-form Service Agreement that EZSchoolPay enters with a school district states that, if the school district faces an information request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") or an analogous state statute such as New York's Freedom of Information Law ("FOIL"), the school district must invoke statutory exemptions for trade secrets and confidential commercial or financial information and deny the request.

101. The standard-form Service Agreement also states that EZSchoolPay may seek an injunction to prevent the district from disclosing information responsive to FOIA or FOIL requests.

102. Thus, EZSchoolPay actively misrepresents and conceals material information about the purpose of the Junk Fees it charges to consumers.

**d. EZSchoolPay Breaches its Contractual Obligation to Disclose Fees Prior to Completing Payment and Entering the Contract**

103. School districts direct parents to the EZSchoolPay website to create an account, and as part of the account setup process, parents are forced to agree to the EZSchoolPay TOU.

104. The EZSchoolPay TOU states that "[i]f you are required to pay a fee, you will be notified prior to finalizing your payment. You will be notified of the exact amount of the fee prior to making your payment, and you will be allowed to cancel your transaction at no charge." However, families, in reality are left with essentially no other choice but to pay the fees, if they want to provide a meal for their children at school.

105. Parents and guardians whose schools' contract with EZSchoolPay are strongly encouraged to enable EZSchoolPays' "Recurring Payments" feature on their child's payment account.

106. A parent or guardian sets up the "Recurring Payments" feature by identifying a payment source (a credit card, debit card, or bank account); a minimum balance (for example, $5.00); and an automatic payment amount (for example, $10.00). EZSchoolPay will then automatically deduct the specified payment amount from the payment source whenever the child's account balance drops below the minimum balance.

107. EZSchoolPay charges the same Junk Fees to payments made using its Auto-Replenish feature as it does for payments made through the standard payment workflow.

108. Contrary to its contractual obligations, EZSchoolPay extracts the Auto-Replenish amount, plus the Junk Fees, *prior* to disclosing that fees will apply to the transaction.

**D. Plaintiff's Experiences with EZSchoolPay**

109. Plaintiff Dodge is the parent of three students in the New Hartford Central School District in New Hartford, New York.

110. Defendants contracted with New Hartford Central School District to provide payment processing services through the website Defendants maintains at www.ezschoolpay.com ("EZSchoolPay Portal").

111. Plaintiff Dodge created and uses an online account on EZSchoolPay Portal.

112. Plaintiff Dodge contracted with EZSchoolPay in which she made payments and they made arrangements by which her children would reach school lunches.

113. Plaintiff Dodge uses the EZSchoolPay Portal to transfer funds to her children's school lunch account. Plaintiff Dodge usually loads money onto her children's account on as needed basis, *i.e.* once every two weeks or once a month, and typically transfers $50.00 to her children's account in each transaction.

114. For transactions of $50.00 or less, Defendants charge Plaintiff Dodge a flat transaction fee of $2.95.

115. In other words, *at the very minimum*, Defendants add a 5.9% fee ($2.95 on a $50 transaction), purportedly for processing Plaintiff's payments and covering the costs of maintaining the EZSchoolPay Portal site. But Defendants' fee is often more egregious; for example, Plaintiff Dodge would be charged a $2.95 fee for an $8.00 load on her child's account which represents a massive 36.9% of the *entire* transaction, which equates to over 41 times that actual cost of the transaction[30].

116. Plaintiff Dodge has also used EZSchoolPays' Auto-Replenish feature and specified a payment amount of $20.00 or $50.00 when her children's account balance drops below the minimum.

117. EZSchoolPay did not warn or disclose to Plaintiff Dodge that her Auto-Replenish payment would incur $2.95 in Junk Fees.

118. Plaintiff Dodge only learned about the addition of Junk Fees to her Auto-Replenish payment when she received an email receipt charging her $22.95 to add $20.00 to her children's school lunch accounts.

119. Plaintiff Dodge would not have used EZSchoolPay for payment processing had she known that the Junk Fees EZSchoolPay charges were unrelated to the actual costs EZSchoolPay incurs for payment processing and website maintenance.

120. Plaintiff Dodge would not have used EZSchoolPay for payment processing had she known that she would incur undisclosed Junk Fees when using the Auto-Replenish feature.

121. EZSchoolPay also failed to disclose or make available a fee-less processing option.

## **CLASS ACTION ALLEGATIONS**

---

[30] *See* Visa Product and Service Rules at Rule 5.5.1.8 (permitting a surcharge maximum amount of 3%); *id.* at Table 5-4 (requiring "a flat or fixed amount, regardless of the value of the payment due.").

122. Plaintiff brings this case individually and, pursuant to Rule 23, on behalf of the class defined as:

> All citizens of New York who, in the six years preceding the filing of the Complaint, paid Junk Fees to EZSchoolPay.

123. Subclasses may be necessary based on the nature of the Junk Fees assessed.

124. Specifically excluded from the Class are Defendants; any entity in which Defendants has a controlling interest; Defendants' legal representatives, officers, directors, agents, trustees, assigns, successors, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers; the judge to whom this case is assigned; his or her court staff and law clerks; all members of the judge's immediate family; and Class Counsel.

125. Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definition.

126. **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Plaintiff does not know the exact size of the Class because this information is exclusively within Defendants' control. However, based on the nature of the commerce involved, and the size and scope of Defendants' business, Plaintiff believes the Class likely numbers in the tens or hundreds of thousands. The names and addresses of all such Class members are known to Defendants and can be identified through Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

127. **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

a) Whether Defendants' descriptions of its Junk Fees are unfair and deceptive;

b) Whether Defendants' Junk Fees pay for processing costs or are mostly profit;

c) Whether Defendants violated New York law by concealing that its fees were not reasonably related to costs incurred;

d) Whether Defendants' violations of New York law proximately caused ascertainable losses to Plaintiff and Class members;

e) The amount of damages and other relief to be awarded to Plaintiff and the Class members; and

f) Whether Plaintiff and Class members are entitled to injunctive relief.

128. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and other Class members were all subject to a standard form Terms of Use agreement and were charged the same unlawful Junk Fees by Defendants. Plaintiff and Class members seek identical legal remedies under identical legal theories. Plaintiff's claims do not conflict with the interests of any other members of the Class.

129. **Adequacy of Representation:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members whom she seeks to represent. Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

130. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendants breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

131. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

132. Defendants also acted and refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and injunctive relief for the Class as a whole. Separate actions would create the risk of inconsistent or varying adjudications with respect to individual Class members.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF N.Y. GBL § 349
## (On Behalf of Plaintiff and the Class)

133. Plaintiff repeats and re-allege the factual allegations above, as if fully alleged herein.

134. New York Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in the state of New York. N.Y. GBL § 349(a).

135. EZSchoolPays' payment platform is a business, trade, commerce, and/or service offered within the state of New York, within the meaning of N.Y. GBL § 349(a).

136. EZSchoolPays' collection of transaction, convenience, and junk fees for monetary transfers made on its payment platform is conduct oriented toward consumers like Plaintiff and Class members.

137. EZSchoolPay engaged in deceptive business practices by making misleading or false statements regarding fees charged to Plaintiff and putative Class members.

138. EZSchoolPay violated New York law when it misrepresented the purpose of the fees it charges to use its platform. EZSchoolPay represents that its fees are "designed to cover or offset the normal costs of processing credit card transactions and other costs associated with maintaining a credit card merchant account". That statement is a false and deceptive misrepresentation because the cost of processing payment transactions is well below the amount of the fee charged. Thus, the Junk Fees EZSchoolPay charges for electronic transactions are mostly profit, which it keeps.

139. EZSchoolPay also violates New York law when it fails to disclose and conceals from Plaintiff and Class members material facts including that (1) the amount of the fees it charges bear no reasonable relationship to the costs it incurs to provide electronic payment processing services and are far in excess of the cost, if any, incurred by actual services performed in processing deposits into Plaintiff's and the Class members' accounts; (2) that the fees it charges parents are primarily for profit; (3) that it also assesses duplicative charges to the school districts for its services, and (4) the school district is not the beneficiary of the Junk Fees.

140. EZSchoolPay failed to disclose material terms that would be important to consumers, such as the existence of fee-free payment options, the payments made by the school

(or school district) to cover the cost of Defendants' services, the actual cost of Defendants' services, the fact that less food and beverages are accessible to children because of these fees, the existence of the terms of the contract between the school (or school districts) and EZSchoolPay, that EZSchoolPay retains the Junk Fees and it is not going to the school districts, and the fact that federal law prevents the assessment of any fees – let alone junk fees.

141. Upon information and belief, EZSchoolPays' contract with the school and/or the school district requires it to abide by not just state and federal law, but also with rules dictated by financial institutions and credit card companies – especially those related to being a merchant and assessing fees on business transactions.

142. Upon information and belief, the rules of credit card companies, like Visa's Rules have been incorporated into the contracts and terms of service between Defendants and the school districts where Plaintiff Dodge made payments.

143. EZSchoolPay has violated Visa's Rules[31] in several material ways:

a. Under Table 5-4 at line 3 (page 371 of Visa's Rule), EZSchoolPay cannot charge a convenience fee if "the Merchant operates exclusively as a Card-Absent Environment." Upon information and belief, the school cafeteria at Plaintiff's schools was a card-absent environment because the schools did not accept credit cards at the point of sale.

b. Under Table 5-4 at line 4, EZSchoolPay can only charge a convenience fee if that merchant provides goods or services to the Cardholder.

---

[31] https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-public.pdf

c. Under Table 5-4 at last line, a convenience fee cannot be charged on a "Recurring transaction or an Installment Transaction." Plaintiff Dodge was assessed a convenience fee on her recurring transactions.

d. Under Rule 5.5.1.8, "The Credit Card Surcharge maximum amount is 3.00%... In ***no case*** may the Credit Card Surcharge amount exceed the Maximum Surcharge Cap." (emphasis added). By charging $2.95 on every transaction, EZSchoolPay is accessing a surcharge well above the 3.00% maximum required by Visa's rules, *e.g*. 36.9% for a $8.00 transaction ($2.95 on an $8 transaction).

e. Under Table 5-3: For Electronic Commerce Transaction at the "Point of Entry: The first page that references credit card brands accepted, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text…Point of Transaction: Checkout page, in a minimum 10-point Arial font, but in any case no smaller or less prominent than surrounding text." EZSchoolPay does not properly disclose that a fee will be accessed and charged at the Point of Entry or Point of Transaction.

144. Table 5-4 provides the following directives:

Table 5-4: Convenience Fee Requirements

| Convenience Fee Requirement | AP Region | US Region |
|---|---|---|
| Charged for a bona fide convenience in the form of an alternative payment channel outside the Merchant's customary payment channels and not charged solely for the acceptance of a Card | X | X |
| Added only to a Transaction completed in a Card-Absent Environment | X | X |
| Not charged if the Merchant operates exclusively in a Card-Absent Environment | X | X |
| Charged only by the Merchant that provides goods or services to the Cardholder | X | X |
| Applicable to all forms of payment accepted in the payment channel | X | X |
| Disclosed clearly to the Cardholder:<br>• As a charge for the alternative payment channel convenience<br>• Before the completion of the Transaction. The Cardholder must be given the opportunity to cancel. | X | X |
| A flat or fixed amount, regardless of the value of the payment due<br>In the AP Region: An ad valorem amount is allowed if required by applicable laws or regulations. | X | X |
| Included as part of the total amount of the Transaction and not collected separately | X | X |
| Not charged in addition to a surcharge | X | X |
| Not charged on a Recurring Transaction or an Installment Transaction | X | X |

ID# 0027492 Edition: Apr 2025 | Last Updated: Apr 2023

145. Plaintiff Dodge made payments via her Visa card.

146. EZSchoolPay assessed convenience fees that violated Table 5-4 above.

147. EZSchoolPay has violated Visa's Rules, and upon information and belief other credit card rules of a similar nature, as a merchant, which were incorporated into the agreement with the school and school district.

148. Additionally, EZSchoolPay violates Visa Table 5-4 by charging **any** convenience fee because the "Merchant operates exclusively in a Card-Absent Environment."

149. Because children do not traditionally hold credit cards and because schools in cafeterias do not accept credit cards, the Merchant (i.e., the school cafeteria) is a "Card-Absent Environment.").

150. EZSchoolPay violated GBL § 349 by overcharging students and their families significantly more than the cost of providing the services and grossly inflating the Junk Fees charged onto bills and payments by families and students.

151. EZSchoolPay further violated the law by forcing students and their families into circumstances whereby those students and families, as consumers, had no alternative means of paying for school lunches without incurring significantly inflated costs.

152. EZSchoolPay further violated the law by deceptively charging a fee (which it knew or should have known to be illegal under federal law), by mislabeling, and then displaying it as a convenience or processing fee.

153. Upon information and belief, EZSchoolPay further violated the law by preventing other competitors from entering the market for the same services at the school (or within the school district) that might provide cheaper services.

154. EZSchoolPay further violated the law by not complying with credit card company rules like Visa's Rules that provide limitations on how, when, the amount, and the nature of the Junk Fee being assessed.

155. EZSchoolPays' omissions and intentional misstatements were knowing and willful because EZSchoolPay knows its own costs, profits, and terms of its contracts with school districts, and affirmatively conceals the same from consumers like Plaintiff and Class members.

156. EZSchoolPays' omissions were material because reasonable consumers would not choose to pay fees knowing that they are well in excess of cost or that fee-free methods of payment are available, contrary to EZSchoolPays' representations. EZSchoolPay intended that Plaintiff and the Class rely on its material omissions.

157. The scheme perpetrated by EZSchoolPay in the way it assessed its Junk Fees was deceptive and unfair, and its explanation for the Junk Fees it charged was false and/or misleading. EZSchoolPays' conduct lacks honesty in fact, fair dealing, and good faith and has the capacity to, and did, mislead consumers like Plaintiff and the Class who were acting reasonably.

158. EZSchoolPays' scheme is designed to generate fees for itself, and its shareholders, without regard to the negative impact its fees have on students' access to food, nutrition, lunch, breakfast, and milk, and the consequential effect its fees have on students' ability to learn.

159. EZSchoolPays' scheme is designed to double-dip: take money from the parents and take money from the schools (or school districts) – while closing the door on any competition within the school (or school district).

160. The result of EZSchoolPays' excessive profit-taking is that both parents and schools are left with less money to pay for food for students.

161. EZSchoolPays' Junk Fees are also unlawful because they violate federal policy as articulated by the USDA.

162. USDA is responsible for administering the National School Lunch Program under the Richard B. Russell National School Lunch Act, 42 U.S.C. § 1751 et seq. ("National School Lunch Act"). USDA regularly issues policy memoranda, regulations, and other guidance materials relating to National School Lunch Act requirements.

163. In 2010, USDA issued guidance stating that "[c]hildren participating in School Nutrition Programs shall not be charged any additional fees for supervision or other services provided in conjunction with the delivery of benefits under these programs. . . . By charging fees in addition to the regular reduced price or paid meal charge, a school is limiting access to the

program and imposing an additional criterion for participation," in violation of the National School Lunch Act.[32]

164. USDA updated that guidance in 2014 to state that School Food Authorities, i.e., school districts, could "charge a fee for these types of services" so long as the School Food Authorities offer a method to add money to the account that does not incur fees.[33]

165. Under USDA regulations, a "School Food Authority" is "the governing body which is responsible for the administration of one or more schools." 7 C.F.R. § 210.2.

166. EZSchoolPay s is not a "School Food Authority." While the 2014 Guidance allows a School Food Authority to charge a fee, nothing in the 2014 Guidance extends that permission to third party service providers like EZSchoolPay.

167. EZSchoolPays' Junk Fees are not charged by a School Food Authority, nor are they passed on to or retained by a School Food Authority. Instead, EZSchoolPay keeps Junk Fees for profit. This practice violates USDA policy stating that children participating in school nutrition programs "shall not be charged" additional fees, because such fees limit access to the program and impose additional criteria for participation.

168. EZSchoolPays' fee practices described above contravene N.Y. GBL § 349.

169. Plaintiff and Class members were damaged and suffered ascertainable losses when they paid fees to EZSchoolPay without full knowledge of the relevant facts. Had EZSchoolPay not misled Plaintiff and the Class as to the true nature of its fees, and concealed material information from them, Plaintiff and the Class would not have paid EZSchoolPays' fees.

---

[32] *See* U.S. Department of Agriculture, Food and Nutrition Services, *Online Fees in the School Meal Programs*, https://fns-prod.azureedge.us/sites/default/files/cn/SP02-2015os.pdf (Oct. 8, 2014).

[33] *Id.*

170. As a result of EZSchoolPays' above-mentioned violations, Plaintiff suffered an ascertainable loss of an amount no less than the amount of their payments of fees to EZSchoolPay.

171. But for EZSchoolPays' deceptive acts, misrepresentations, and omissions in violation of New York law, Plaintiff and Class members would not have suffered any monetary damage.

172. EZSchoolPays' acts and practices in violation of N.Y. GBL § 349 were willful and knowing.

173. Plaintiff and each Class member are entitled to a refund of their actual damages, *i.e.* all of the money they paid to EZSchoolPay in the form of unlawful Junk Fees, or fifty dollars, whichever is greater; treble damages for EZSchoolPays' willful and knowing violations, and reasonable attorneys' fees and costs. N.Y. GBL § 349.

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

174. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

175. Plaintiff and Class members contracted with EZSchoolPay for use of its electronic payment platform.

176. Plaintiff and Class members gave consideration and performed all conditions precedent to filing this action.

177. EZSchoolPay promised Plaintiff and Class members that (1) that it would provide students with money that would result in school lunches and food, and (2) it would disclose the existence of any transaction fees prior to completing any payment to EZSchoolPay.

178. EZSchoolPay did not provide the full amount of services contracted for because it skimmed from the top in the form of exaggerated Junk Fees.

179. EZSchoolPay did not provide the services contracted for because the Junk Fees were inflated beyond the actual cost of providing the transaction such that EZSchoolPay reaped extraordinary charges and benefits.

180. EZSchoolPay did not disclose to Plaintiff Dodge and Class members that a payment made using the EZSchoolPays' "Auto-Replenish" feature would be subject to additional transaction junk fees.

181. Despite failing to disclose the existence of transaction fees for *any* payment using the "Auto-Replenish" feature, EZSchoolPay materially breached the contract by charging Plaintiff Dodge and Class members Junk Fees for *every* payment completed through that feature.

182. EZSchoolPay breached their contract and harmed Plaintiff, students, and their families.

183. As a direct and proximate result of EZSchoolPays' material breach, Plaintiff and Class members were harmed. Plaintiff and Class members suffered actual damages as a result of EZSchoolPays' breach. Plaintiff Dodge and the putative Class are entitled to a refund of the amount paid as transaction fees for use of the Auto-Replenish feature.

184. Plaintiff and Class members seek all damages available under law.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

185. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

186. Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the Second Claim for Relief.

187. Defendants received benefits from Plaintiff and the Class in the form of fees paid to Defendants.

188. EZSchoolPay collected Junk Fees were inflated beyond the actual cost of providing the transaction such that EZSchoolPay reaped extraordinary charges and benefits.

189. EZSchoolPay has been unjustly enriched by forcing Plaintiff, students, and families to engage in the arrangement by which EZSchoolPay takes a transaction or Junk Fee from each and every transaction.

190. EZSchoolPay has been unjustly enriched by preventing customers like Plaintiff from being able to negotiate in the open marketplace such that other providers could offer similar competitive services within the same school, and customers could negotiate the price of such services.

191. EZSchoolPay has been unjustly enriched by failing to offer similarly convenient and cost-effective alternatives to students, customers and families, including making ordinary and normal disclosures that might have given Plaintiff, students, and families reasonable and less costly alternatives to fund school lunches.

192. EZSchoolPay has been unjustly enriched by failing to disclose the availability of those cheaper alternatives that would have resulted in more food for students.

193. It would be unjust to allow Defendants to retain the benefits received from Plaintiff and the Class because Defendants misrepresented the nature and purpose of the fees it charged and received.

194. Defendants are not entitled to keep any fees over and above the actual cost of the services, including an offset accounting for the school's contractual payments to EZSchoolPay.

195. It would be unjust to allow Defendants to profit from transaction fees imposed on school lunch, breakfast, and milk programs, when Defendants are already compensated for their services directly through guaranteed contractual payments obtained from school districts.

196. At most, Defendants are entitled to receive only the portion of any fee that was actually used to cover processing costs and the cost of maintaining its website—an amount far less than the amount Plaintiff and the Class paid. Any excess must be returned to Plaintiff and Class members.

197. Plaintiff and Class members seek restitution of benefits unjustly retained by Defendants.

**FOURTH CLAIM FOR RELIEF**
**FRAUD BY MATERIAL OMISSION**
**(On Behalf of Plaintiff and the Class)**

198. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

199. Plaintiff brings this claim of Fraud on behalf of herself and a class of similarly situated individuals.

200. EZSchoolPay in its interactions with Plaintiff fail to disclose any other methods for conducting transactions that were free from the Junk Fees.

201. EZSchoolPay utilized public materials and generalized templated documents to convey its offerings and the nature of its services, which similarly did not disclose any fee-free options.

202. These disseminations and conveyances contained material misstatements by omission, upon which Plaintiff and similarly situated families and parents relied – namely because

they were not given the chance to decide for themselves whether it was relevant or material to their decision to send money to Defendants for school lunches for their child.

203. Upon information and belief, Defendants were aware that Plaintiff, students, and their families would not pay excessive Junk Fees with the disclosure of fee-less options.

204. Defendants' failure to disclose the Junk-Fee-less options resulted in greater harm to Plaintiff, who would have chosen or made other arrangements to fund their children's lunch accounts.

205. Upon information and belief, similarly situated Class members were affected by this lack of disclosure and the harm done.

206. Plaintiff and Class members seek damages, attorney's fees, and costs.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT – THIRD PARTY BENEFICIARY CLAIM**
**(On Behalf of Plaintiff and the Class)**

207. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

208. Plaintiff brings a third-party beneficiary claim that EZSchoolPay has violated its contract with the schools and school districts.

209. As parents of students within the school and school district, Plaintiff Dodge is not privy to the exact terms of the contracts and its terms, but have requested the same via freedom of information act requests.

210. Upon information and belief, school districts across the country regularly require merchants to comply with the rules and regulations of Visa, Mastercard, Discover, and American Express. *See Story v. Heartland Payment Systems, LLC*, Case No. 3:19-cv-724-TJC-JBT (M.D. Fla. March 8, 2021) (Dkt. 117 at ¶ 26 [referring to a "standard-form contract titled 'Government

and Public Education Credit/Debit Card Processing Agreement" as an agreement "used by … other schools across the country."]).

211. Upon information and belief, EZSchoolPay is a merchant under the terms of its contract with the schools, the school district, and with credit card companies like Visa.

212. Upon information and belief, EZSchoolPay is under an obligation through these various contracts to comply with rules of the credit card companies, like Visa's Rules.

213. EZSchoolPay has violated Visa's Rules by: (1) assessing a convenience or Junk Fee on recurring charges like those of Plaintiff Dodge, (2) by assessing a convenience fee in a "card-absent environment" that is the school cafeteria, (3) by assessing charges above 3%, (4) by assessing a charge in a circumstance where EZSchoolPay is not the one providing any actual food or beverage service to the cardholder.

214. Thus, EZSchoolPay violated its contract with the schools and school districts by not complying with the rules of the credit card companies – via Plaintiff's Visa credit/debit card payments.

215. Plaintiff and her children were the intended beneficiary of the contract between EZSchoolPay and the schools (and/or school districts).

216. Defendants have violated New York common law in the form of breaching its contractual duty wherein Plaintiff and her fellow parents, guardians, and students were the intended third-party beneficiaries.

217. Defendants' breach has harmed Plaintiff and her fellow parents, guardians, and/or children in the form of amounts paid over and above the legally allowed fees and charges.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, pray that the court enter an order:

(a) Certifying the Class under Fed. Rule of Civil Procedure 23, naming Plaintiff as representative of the Class and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) Declaring EZSchoolPay responsible for notifying all Class members of this action;

(c) Imposing injunctive relief, including prohibiting EZSchoolPay from charging on a per transaction basis;

(d) Declaring that EZSchoolPay is in breach of its contracts with Plaintiff and Class members and awarding compensatory damages;

(e) Awarding disgorgement of all Junk Fees collected and retained from Plaintiff and Class members; awarding actual damages, punitive damages; and statutory and treble damages pursuant to N.Y. GBL § 349.

(f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(g) Awarding pre- and post-judgment interest on any amounts awarded; and,

(h) Awarding such other and further relief as may be just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 24, 2026

Respectfully submitted,

*/s/ Michael A. Tompkins*
Michael A. Tompkins, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com

Nicholas A. Colella, Esq.*
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor

Pittsburgh PA 15222
412.322.9243
nickc@lcllp.com
*Pro Hac Vice Forthcoming*

*Counsel for Plaintiff and the Proposed Class*